M. S. BEASLEY v. D. C. COLEMAN, Sheriff.

180 So. 625.
Opinion Filed January 7, 1938.
On Rehearing April 25, 1938.

*James M. Carson,* and *John E. Mathews, Lacy Mahon, Moe B. Safer* and *Lewis W. Petteway,* for Petitioner;

*Cary D. Landis,* Attorney General, *Tyrus A. Norwood,* Assistant Attorney General, *Robert R. Taylor,* County Solicitor and *Glenn C. Mincer,* Assistant County Solicitor, for Respondent.

BUFORD, J.—This is a habeas corpus proceeding, originai jurisdiction in this Court.

Beasley was informed against in the Criminal Court of Record of Dade County. The information charged:

"That M. S. Beasley of the County of Dade and State of Florida on the 15th day of September, in the year of our Lord, one thousand, nine hundred and thirty-six, in the County and State aforesaid, being then and there engaged in the business of lending money, in the County of Dade, State of Florida, in person, and as the Agent and Representative of a person, association of persons, firm and company, engaged in the business of lending money in the County of Dade, State of Florida, doing business under the firm name and style of Young Finance Company, hereinafter called the Company, a better and more particular description of said Company and the name of the person and persons consisting of and having interest in said Company being to the County Solicitor unknown, did then and there make a loan of Ten Dollars ($10.00) lawful money

of the United States of America of the value of Ten Dollars ($10.00) lawful money of the United States of America, to one SIDNEY T. BRAMAN for a period of two weeks, and did then and there unlawfully, wilfully and knowingly charge a sum of money greater than said sum so lent and an additional sum of money equal to twenty-five per centum per annum upon said sum lent, to-wit: the sum of One Dollar ($1.00) lawful money of the United States of America of the value of One Dollars ($1.00) lawful money of the United States of America, by a contract, contrivance, and device by way of a pretended sale and assignment of salary and wages, a better and more particular description, tenor and effect of said pretended sale and assignment of salary and wages being to the County Solicitor unknown, except as hereinafter set out, and for the reason that the original and only copy thereof was last seen in the exclusive possession of the Defendants, and that the words and figures contained thereon are peculiarly and solely within the knowledge of the Defendants except as hereinafter set out.

"That is to say that on said date in said County and State the said defendants and Sidney T. Braman then and there being, the said Sidney T. Braman then, and there went to the office of the said Company and the said Defendants who were then and there engaged in the business of lending money in the County of Dade, State of Florida, and requested a loan of Ten Dollars ($10.00) lawful money of the United States of America of the value of Ten Dollars ($10.00) lawful money of the United States of America.

"That upon the request of and in order to obtain from the defendants the loan of said Ten Dollars ($10.00) lawful money of the United States of America of the value of Ten Dollars ($10.00) lawful money of the United States of America, the said Sidney T. Braman executed and de-

livered to the said Company and the defendants a contract, in writing, pretending to be an unconditional sale and assignment of salary and wages, a better and more particular description being to the County Solicitor unknown for the reason herein above set out.

"That upon the Execution and delivery of said contract pretending to be an unconditional sale and assignment of salary and wages herein above described, the defendants delivered to the said Sidney T. Braman the sum of Ten Dollars ($10.00) lawful money of the United States of America of the value of Ten Dollars ($10.00) lawful money of the United States of America.

· "The said contract and pretended unconditional sale and assignment of salary and wages was not a bona fide unconditional sale and assignment of salary and wages but was a fictitious, false, pretended and spurious sale and assignment of salary and wages unlawfully invented, conceived, prepared, intended and used by the said Company and the defendants as a camouflage, subterfuge, contrivance, scheme, system and device, for the purpose of unlawfully, wilfully and knowingly charging the said Sidney T. Braman the sum of One Dollar ($1.00) lawful money of the United States of America of the value of One Dollar ($1.00) lawful money of the United States of America, for the loan of Ten Dollars ($10.00) lawful money of the United States of America of the value of Ten Dollars ($10.00) lawful money of the United States of America, for a period of two weeks.

"IN ORDER to further hide and conceal the unlawful charges and usurious interest, the defendants invented, planned and used the system of having the said Sidney T. Braman come to the office of the said Company and to the defendants on divers and sundry dates thereafter at regular intervals of two weeks and execute and deliver to the de-

fendants false, pretended and fictitious written instruments, the words, tenor and effect and dates of which are unknown to the County Solicitor for the reason that there being no copies made and the originals at the request of the defendants, were prepared by and delivered to the possession of the defendants; therefore, the contents, figures, words, tenor, effect and dates thereof are peculiarly and solely within the knowledge of the defendants.

"That all of the false, pretended and fictitious contracts pretending to be a sale and assignment of salary and wages executed by Sidney T. Braman, herein described, were related, connected and associated with the loan dated the 21st day of September, 1936, herein above mentioned, and in truth and in fact were a sham, fictitious, false, pretended and spurious, and were prepared, invented, conceived, intended and used by the defendants as a camouflage, subterfuge, contrivance, scheme, system and device to wilfully, knowingly and unlawfully hide and conceal the unlawful charging of usurious interest."

After being arrested Beasley sued out writ of habeas corpus in this Court. The return of the Sheriff shows that Beasley is held under a *capias* issued under the above quoted information.

It is contended that the information wholly fails to charge an offense under the provisions of Chapter 10177, Laws of Florida 1925, and that the provisions of that Chapter, by implication if not in terms, repeals the provisions of Section 4855 R. G. S., 6942 C. G. L., in all counties of the State having a population of more than 40,000 where the loans involved amount to $300.00 or less. The only question which we are asked to determine is whether or not Section 1 of Chapter 10177, which is as follows:

"That no person, copartnership or corporation shall engage in the business of making loans of money, credit,

goods or things in action in the amount, or to the value of Three Hundred ($300.00) Dollars or less, and charge, contract for, or receive a greater rate of interest than ten per centum per annum therefor, except as authorized by this Act, and without first obtaining a license from the Comptroller of the State of Florida, hereinafter called the licensing official," together with Section 18, which is as follows:

"Any person, copartnership or corporation and the several officers and employees thereof who shall violate any of the provisions of Sections One (1), Eight (8), Twelve (12), Thirteen (13) or Seventeen (17) of this Act shall be guilty of a misdemeanor and upon conviction thereof shall be punished by a fine of not more than Five Hundred ($500.00) Dollars, or by imprisonment of not more than six (6) months or by both such fine and imprisonment in the discretion of the court," and Section 21, which is as follows:

"All Acts or parts of Acts inconsistent with the provisions of this Act are hereby repealed, and this Act shall take effect September 1st, 1925," supersedes in Dade County the provisions of Sections 4855 R. G. S., 6942 C. G. L., which is as follows:

"Any person, association of persons, firm or corporation, or the agent, officer or other representative of any person, association of persons, firm or corporation lending money in this State who shall wilfully and knowingly charge or accept any sum of money greater than the sum of money loaned, and an additional sum of money equal to twenty-five per cent per annum upon the principal sum loaned, by any contract, contrivance or device whatever, directly or indirectly, by way of commissions, discount, exchange interest, pretended sale of any article, assignment of salary or wages, inspection fees or other fees or otherwise, or for

forbearing to enforce the collection of such moneys or otherwise, shall forfeit the entire sum, both the principal and interest, to the party charged such usurious interest, and shall be deemed guilty of a misdemeanor, and on conviction be fined not more than one hundred dollars, or be imprisoned in the county jail not more than ninety days, or both, in the discretion of the court."

It is contended that because the information does not charge that the accused was engaged in the business of lending money in the County of Dade and State of Florida without having procured a license as is required by Chapter 10177, *supra*, the information fails to charge any offense under the provisions of that Act and that the provisions of that Act supersede in Dade County the provisions of Section 4855 R. G. S., 6942 C. G. L., and that therefore the allegations contained in this information are not sufficient to charge an offense under the laws of Florida applicable to Dade County.

The contention of the petitioner is clearly apparent, but we are unable to agree that the contention is a valid one. The title of Chapter 10177 is as follows:

"AN ACT To License and Regulate the Business of Making Loans in Certain Counties in Sums of Three Hundred ($300) Dollars or Less, Secured or Unsecured, at a Greater Rate of Interest than Ten Per Centum Per Annum; Prescribing the Rate of Interest and Charge Therefor, and Penalties for the Violation Thereof, and Regulating the Assignment of Wages or Salaries; Earned or to be Earned When Given as Security for Any Such Loan."

There is nothing in the title to indicate that the Act which follows is to contain anything in regard to the crime of usury. Neither does Section 1 of the Act condemn usury. The provisions of Section 1 make it unlawful for any person, copartnership or corporation to engage in the

business of making loans of money, credit, goods or things in action in the amount or to the value of $300.00 or less and charge, contract for or receive a greater rate of interest than 10% per annum therefor, except as authorized by the Act and without first obtaining a license from the Comptroller of the State of Florida to engage in such business.

The information here does not charge that the accused engaged in the business of lending money without having procured a license to engage in the business commonly called small loans, but this information charges the offense which is denounced by Section 4855 R. G. S., 6942 C. G. L., hereinbefore quoted.

If the information had charged that the accused was engaged in the business of making loans of money in the amount of $300 or less without having procured the required license from the Comptroller, and that he did charge, contract for or receive a greater rate of interest than 10% per annum therefor, the gravamen of the charge would have been "engaging in the business * * * without having procured the license therefor" and would have fallen within the purview of Section 10177, *supra*.

It is well settled in this jurisdiction that in order that a court may declare that one statute impliedly repeals another, it must appear that there is a positive repugnancy between the two, or that the last was clearly intended to prescribe the only rule which should govern the case provided for, or that it revises the subject matter of the former. Sanders v. Howell, 73 Fla. 563, 74 Sou. 802; Dade County v. City of Miami, 77 Fla. 786, 82 Sou. 354; City of St. Petersburg v. Pinellas County Power Co., 87 Fla. 315, 100 Sou. 509.

This Act was before us for consideration in the case of Beasley v. Cahoon, Sheriff, 109 Fla. 106; 147 Sou. 288. In that case it was contended that the Act was void because of

being obnoxious to certain stated provisions of the Constitution mentioned therein. The Act was held valid against the attack there made: In that case Mr. Chief Justice DAVIS filed a concurring opinion in which, amongst other things, he said:

"My view is that Chapter 10177, Acts of 1925, is in *pari materia* with all the other usury laws of Florida. Amos v. Mathews, 99 Fla. 1, 126 Sou. Rep. 308. And being no more than a permissible exception to the original operation of the general usury laws, an exception that could have been written into such general usury laws in the first instance, I am unable to see upon what basis the 1925 Act must now fall on the ground of an alleged denial of the equal protection of the laws.

"The courts have repeatedly rejected the idea that equal protection of the laws means that the Legislature may not deal with a conspicuous class in a particular way although logically that class may not be distinguished in any degree from others not embraced in the class covered by the law, but which might have been or should be as a matter of policy included. Central Lumber Co. v. State of South Dakota, 226 U. S. 157, 33 Sup. Ct. Rep. 66, 57 L. Ed. 164; Keymann Brewing Co. v. Brister, 179 U. S. 445, 21 Sup. Ct. Rep. 201, 45 L. Ed. 269; Noble v. Carlton, 36 Fed. (2nd) 967.

"Suppose that at the time Chapter 10177 was enacted, there had been no other usury laws at all on the statute books. This fact would not have prevented the Legislature from singling out for special regulation that class of money lenders who fall within the purview of Chapter 10177, *supra,* or preclude the Legislature's right to regulate them to the extent provided for by that Act. Upon what principle, therefore, can this Court say that an Act passed in 1925 is rendered unconstitutional because it happens to delimit

the scope of an earlier Act on the subject of usury in 1909? Since the 1925 Act is the latest expression of the Legislature, would not it supersede the 1909 Act if both cannot constitutionally stand together on the same statute books?

"I think the answer to all these questions is that both Acts must stand. This is so because the 1925 Act would be valid if we had no usury statute at all, and were governed solely by the common law. As has been pointed out, at common law charging excessive or unreasonable interests, or usury, was no criminal offense whatsoever. Hence the mere presence on the statute books of an earlier usury law conflicting (if we put it that way) with the 1925 Act, does not render the last Act of the Legislature invalid, if the 1925 Act would be valid in relation to the common law, on the subject dealt with.

"The *right to charge* usury is not given by any of these statutes. On the contrary, *the act of charging usury* could be exercised as a common law right if all the statutes were repealed. It was not punishable at all as a criminal offense to charge excessive interests, and an excessive interest charge was only redressible in the civil courts on certain equitable principles when deemed 'unconscionable.' So all the statute of 1925 says in effect is that if you, as one of the designated class of money lenders, can get a special license to do it, you can then exercise your common law privileges of exacting an amount of interest unlimited by law as to rate, except as provided by the statute which limits it only as not to exceed 3½ per cent per month on a principal that does not exceed $300.00."

We think that Judge Davis' language as used in that opinion is applicable here and that it should rule this case.

When the principles so stated are applied, we reach the conclusion that the provisions of Chapter 10177, *supra*, constitute exceptions which may have been just as well

written into Chapter 5960, Acts of 1909. Both statutes when considered *in pari materia* have a definite field of operation and usefulness.

The writ should be quashed and the petitioner remanded.

It is so ordered.

ELLIS, C. J., and WHITFIELD, TERRELL, BROWN and CHAPMAN, J. J., concur.

PER CURIAM.—The information in this case does not charge the offense of doing business without a license; but it is brought pursuant to section 6942 (4855) C. G. L., under which section no license is required, and the penalty upon conviction for charging more than 25% interest on money actually loaned, is a fine not exceeding $100.00 or imprisonment not exceeding ninety days, or both. If filed in any county of the State, it would be under section 6942 (4855) C. G. L.

If the information, filed in a county having 40,000 or more population, had alleged that the defendant did "engage in the business of making loans of money * * * *in the amount or to the value of three hundred dollars or less,"* and had alleged facts showing a violation of Section 1, Chapter 10177, Acts of 1925, Section 3999 C. G. L., he would upon conviction be subject to a fine not exceeding $500.00, or to imprisonment not exceeding six months, or both, for a misdemeanor under Section 18, Chapter 10177, Acts of 1925, Section 7880 C. G. L. If in such case the defendant shows he had a license under Section 4, Chapter 10177, Acts of 1925, Section 4002 C. G. L., it would be a good defense to a charge as above stated.

There is no inconsistency between 6942 (4855) C. G. L. and Sections 3999 and 7880 C. G. L. In the first case no license is required and a misdemeanor is committed in any county of the State when an interest rate exceeding 25%

per annum on the amount actually received by the borrower is willfully and knowingly charged or accepted by the lender. In the other case, applicable only in counties having not less than 40,000 population, a license is required and a misdemeanor is committed if without a license therefor a person *engages in the small loan business,* and charges or receives a greater rate of interest than ten per cent per annum for money so loaned.

If a party in any county in this State is *not engaged in the business of making loans of less than $300.00,* but lends money, he is subject to the Act of 1909.

If a party engages *in the business of making loans of $300.00 or less* in a county of not less than 40,000 population, he is subject to the Act of 1925. If he *engages in the business* without a license and charges more than 10% per annum interest, or if he has a license and charges interest in excess of the rates allowed a licensee, or otherwise violates the Act of 1925, he is punishable under Section 18 of the Act of 1925.

The Act of 1925 is not applicable in any county of less than 40,000 population.

The writ is quashed and the Petitioner is remanded.

ELLIS, C. J., and WHITFIELD, TERRELL, BROWN, BUFORD and CHAPMAN, J. J., concur.