RAFAEL RUESGA v. F. R. DIAZ, SR., MAY GUERRA DIAZ and EXCHANGE NATIONAL BANK, a corporation with its principal place of business at Tampa, Florida, as Executors and Trustees under the will of Felicidad Guerra Ruesga, deceased, et al.

31 So. (2nd) 396            June Term, 1947
July 8, 1947             Division B

*Martin Caraballo* and *John G. Graham,* for appellant.

*Sam Bucklew* and *Knight, Thompson, Knight & Bell,* for appellees.

BUFORD, J.:

The record before us shows that during the year 1933 Felicidad Guerra Ruesga had brought a suit for separate maintenance against her husband Rafael Ruesga; that on May 15th 1933 they entered into an agreement which was as follows:

"This agreement made and entered into this 15th day of May A. D., 1933, by and between Felicidad Guerra Ruesga, of Tampa, Florida, hereinafter called the party of the first part, and Rafael Ruesga, of Tampa, Florida, hereinafter called party of the second part:

"WITNESSETH.

"WHEREAS, the party of the first part is the wife of the party of the second part and has heretofore, as plaintiff, instituted the above suit in chancery in the Circuit Court of Hillsborough County, Florida, against said party of the second part, praying for an accounting, division and distribution as to certain property of said parties, and for separate maintenance and support, and

"WHEREAS, said parties have mutually agreed upon settlement of such differences.

"NOW, THEREFORE, in consideration of the premises and of the mutual covenants, conditions and forebearances to be kept and performed by the parties hereto, it is hereby covenanted, understood and agreed as follows:

"THE PARTY OF THE FIRST PART

"1. Hereby renounces and relinquishes any and all right, title, interest and claim of, in and to the business now conducted by second party under the name and title of Mexican-By-Products Company.

"2. Hereby renounces, releases and relinquishes any and all claim, rights, titles and interest which she has or may have in and to Citizens Bonds No. M 1 to M 10 inclusive and M 70 to M 75 inclusive, and agrees upon the execution of these presents to deliver aforesaid bonds to second party.

"3. Hereby renounces, releases and relinquishes any claim, right, title or interest of, in and to the cash surrender or loan values on any and all policies insuring the life of said second party.

"4. Hereby renounces, releases and relinquishes any and all claim, right, title and interest which she has or may have of, in and to any and all properties, real, personal or mixed, wherever located, of the second party, including any stock in the Tampa Electric Company issued in his name.

"5. Agrees to dismiss all pending actions and litigation and to dissolve any and all injunctions, and discharge all receivers, at her cost and expense.

"6. Hereby agrees to endorse without recourse and assign, transfer and set over one certain mortgage dated Feb. 3rd

1925, executed by Gulf Electrical Appliance Co. to party of the first part and appearing of record in the office of the Clerk of the Circuit Court of Hillsborough County, Florida, in mortgage book 210 page 384.

"THE PARTY OF THE SECOND PART.

"(a) Renounces, releases and relinquishes to first party any and all claim, right, title and interest which he now has or claims or. may have or claim of, in and to all stock of the Tampa Electric Company, a corporation, issued to and standing in the name of first party, and agrees upon the execution of these presents to deliver same to said first party.

"(b) Renounces, releases and relinquishes to first party any and all claim, right, title or interest which he now has or claims or may have or claim in and to the premises known as 812 South Edison Avenue, in the City of Tampa, County of Hillsborough, State of Florida, and more particularly designated as follows: Lot 27, Block 13, of Morrison Grove, according to the map or plat thereof recorded in the Public Records of Hillsborough County, Florida, together with the improvements, buildings, furniture and fixtures thereon or therein contained.

"(c) Renounces, releases and relinquishes to first party any and all claim, right, title and interest which he now has or claims or may have or claim of, in and to the real properties located at Palmetto Beach, Tampa, Hillsborough County, Florida, inherited by first party from estate of her father.

"(d) Renounces, releases and relinquishes to first party any and all claim, right, title and interest which he now has or claims, or may have or claim of, in and to any and all jewelry, gold and precious stones heretofore given by second party to first party as well as inherited by the latter from the estate of her father, as follows; to-wit: One five karat diamond ring; One three karat diamond ring; One three and one-quarter diamond ring; One one and one-quarter diamond ring; One dinner ring; One diamond bracelet; One diamond broach; One pearl necklace; Large pair diamond ear-rings; One pair ear-rings one karat each; Another pair of ear-rings small diamonds; One-fourth karat diamond ring; Diamond lavaliere; 1 - 3 karat diamond ring, gold band and platinum top.

"(e) Renounces, releases and relinquishes to first party any and all claim, right, title and interest which he now has or claims or may have or claim of, in and to the following automobile, to-wit: Franklin Sedan Model _____ Motor.

"(f) Agrees to indemnify first party for all court costs incurred herein.

"It is mutually understood and agreed to by and between the parties hereto that said parties shall pay to their respective counsel the fees for services rendered and contracted by them on their respective accounts. It is further understood and agreed by and between the parties hereto that the above and foregoing agreement shall have no effect whatsoever upon any right of inheritance in case of the death of either party. In consideration of the mutual covenants, promises and forebearances, the parties hereto further agree to resume their marital relation."

They thereupon resumed and continued their marital relations although Rafael was absent a good part of the time in Mexico and so continued up until the time of the death of Felicidad Guerra Ruesga, which occurred on August 9th 1945, at which time she was testate, having theretofore made and executed a will on September 17th 1938, in which she disposed of all her property, real and personal, and in which she bequeathed in the third item of her will to her husband Rafael Ruesga the munificient sum of $1.00 in the following language:

"THIRD: I give, devise and bequeath to my husband, Rafael Ruesga, the sum of One Dollar ($1.00)."

All the balance of her property was disposed of by other bequests. Her will was probated on August 14th 1945. An inventory of her estate was filed. Thereafter, on April 19, 1946, Rafael Ruesga filed claim in Probate Court, as follows:

"Now comes Rafael Ruesga whose place of residence is 812 South Edison Avenue, Tampa, Florida, and whose Post Office Address is 812 South Edison Avenue, Tampa, Florida, and files his claim against the estate of Felicidad Guerra Ruesga, deceased, for the following items and in the following amounts, to-wit:

"One-half of cash in the First National Bank of
Tampa, Florida ............................................................$    217.50

One-half of Tampa Electric Company Dividend
Check No. L. C. 669 ..............................................    237.00

One-half of all certificates of stock in the Tampa
Electric Company, set forth in the appraisal herein
filed ...................................................................... 19,108.12

All of Lot 27, of Block 13, Morrison Grove Subdi-
vision, as per map or plat thereof recorded in Plat
Book 6, page 54, of the Public Records of Hills-
borough County, Florida ......................................  6,500.00

One-half of Lot 6, Block 15, Vicente Guerra's Sub-
division of Lot A, Block 15, of Park Place, City of
Tampa, Florida ......................................................    375.00

All of automobile described as 1941 Buick 4-door
Sedan, Serial No. 13932154 ................................  1,200.00

One-half of all furnishings in the home at 812 So.
Edison Avenue described on pages 3 and 4 of the
appraisal herein filed ..........................................    620.00

All of one pair diamond rings, each with a very
large diamond and nine small diamonds above
large stone ............................................................  6,000.00

One-half of all other jewelry left by decedent and
described in the appraisal herein filed on page 5
thereof as items 2 to 15 inclusive ......................  5,015.00

"That his claim is based upon a written stipulation reserv-
ing his rights under the inheritance laws of the State of
Florida to his share of the estate of the said decedent which
such stipulation was signed by the decedent and by the
claimant on the 15th day of May, A. D., 1933, except that his
claim to the diamond ear-rings is based upon his absolute
ownership thereof and that his claim to the Buick Automobile
is also based upon his ownership thereof, as well as upon his
inheritance rights. That his claim to the homestead of the
parties is based upon his inheritance rights as above and
also upon its homestead character."

On May 10, 1946 F. R. Diaz, Sr. and May Guerra Diaz and
the Exchange National Bank of Tampa, Florida, who were

qualified Executors under the will, filed objections to the claim made by Rafael relying on the contract of May 15, 1933. On June 27, 1946, Rafael filed his petition in the County Judge's Court praying a determination by the Court of his interest in the estate under the terms of the contract of May May 15, 1933, when considered in connection with the will of the deceased wife and averred in effect that the clause in the contract, as follows:

"It is further understood and agreed by and between the parties hereto that the above and foregoing agreement shall have no effect whatsoever upon any right of inheritance in case of the death of either party."—estopped and precluded Felicidad from making disposition by will of the property, title to which had been established in her by the contract of May 15, 1933. On October 21, 1946, pursuant to motion, the County Judge entered his order as follows:

"This cause coming on to be heard upon the Motion of the Executors to dismiss the Petition filed herein by Rafael Ruesga upon the ground that said petition and the agreement attached thereto and made a part thereof, shows upon its face that Felicidad Guerra Ruesga, deceased, was not prevented from making a will if she so desired, and disposing of her estate in any manner she saw fit, and same having been argued by counsel for the respective parties, and the Court being fully advised in the premises, it is

"ORDERED AND ADJUDGED that the petitioner is not entitled to a distributive share of the estate of decedent, and that the Motion to Dismiss said Petition upon the ground above set forth be, and the same is hereby granted and said Petition be, and the same is hereby dismissed."

From this Order appeal was taken to the Circuit Court and there on December 12, 1946, Hon. Harry Sandler, Circuit Judge, affirmed the judgment of the County Judge's Court in this regard and from that judgment appeal was taken to this Court and the matter is now here for review.

Our disposition here depends entirely upon the construction to be given in the clause in the contract, supra, which Rafael relies upon to defeat the provisions of the will.

We find no ambiguity in the language used. Our construction is that it was placed in the contract to make it clear that the respective relinquishments contained in the contract were not to be construed to apply to any claim of right that either party might have under the law of descent and distribution after death of the other party and in nowise affect the right of either party to dispose of any of the property described by sale, gift or assignment, or by will.

The right of inheritance was not affected by the contract. The right of the husband to inherit from the wife was effective only by the action of the wife in making and executing a subsequent will. The right of inheritance remained just the same after the contract as it would have been with no contract.

It has for a very long time been the law in this State that a wife had the power to make a will which would deprive her husband of any interest which he might have under the statute to inherit any part of her property at her death. See McDougald et al. v. Gilchrist, Executor, et al., 20 Fla. 573. It is true that the right of the husband to dispose of his property by will is subject to the right of the surviving wife to dissent from the will and take dower. The legislature of Florida has not enacted into law the right of curtesy which corresponds in behalf of the husband to dower rights in behalf of the wife. This is a matter within the legislative domain and whether or not a lack of the law of curtesy creates an unfair inequality between the status of a widow and that of a widower is a matter with which the court may not without statute interfere.

The language in the contract on which appellant bases his claim is clear and unambiguous and appears, as we have heretofore said, to have been included in the contract for the purpose of making it clear that each of the parties to that contract did not mean thereby to foreclose themselves against any right to claim property therein mentioned under the laws of inheritance in the event of the death of the other party.

We find nothing in the record to indicate that the language was put in the contract for any other purpose or to have any other meaning. Therefore, it in no way limited or abridged

the right of either of the parties to dispose of the property by will.

The judgment of the Circuit Court is affirmed.

THOMAS, C. J., ADAMS and BARNS, JJ., concur.